**M. R. HODGES, Plaintiff,**

v.

**GEORGIA KAOLIN COMPANY,**
**Defendant.**

**Civ. A. No. 1812.**

United States District Court
M. D. Georgia,
Macon Division.

July 2, 1962.

G. Lee Dickens, Jr., Milledgeville, Ga., for M. R. Hodges.

John B. Harris, Jr., of Harris, Russell & Watkins, Macon, Ga., for Georgia Kaolin Co.

ELLIOTT, District Judge.

This action was brought by the Plaintiff in the Superior Court of Twiggs County, Georgia, where the Defendant has a place of business. The cause was removed from the state court to the federal court by the Defendant on a claim of diversity of citizenship of the parties. The Plaintiff challenges the existence of such diversity by a motion to remand the cause to the state court. Except for the ground claimed, there does not appear to be any other basis for federal jurisdiction. The Defendant alleges that its principal place of business is in New Jersey. The Plaintiff contends that it is in Georgia. The Defendant is a New Jersey corporation, so the question of whether or not this court has jurisdiction turns upon what finding this court makes as to the actual principal place of business of the Defendant. The 1958 amendment to Title 28 U.S.C.A. § 1332(c) provides: "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The present action was commenced in November, 1961 and jurisdictional facts existing at that time must furnish the basis for the Court's conclusion as to the Defendant's principal place of business.

A hearing was had on Plaintiff's motion to remand and evidence was introduced in the form of affidavits, answers to interrogatories, responses to requests for admission, documents, and oral testimony. On the basis of this evidence the Court finds that at the time this action was filed the Defendant was engaged in the business of mining, processing and selling kaolin, a clay that is used widely in the ceramic, paper and chemical industries. Its mines and its processing plant are located on lands owned or leased by the corporation in Twiggs County, Georgia. It has a financial interest in some other mining companies and it owns

some lands and leases in other states, but the only mines and processing plants owned and operated by the company are in Georgia. The company is not authorized to do business in any state other than Georgia and New Jersey. It is a New Jersey corporation and all of its corporate stock is beneficially owned by E. J. Grassman, a citizen of New Jersey. Its product is sold in many states and in some foreign countries. In some instances the sale is made directly to the customer and in other instances through distributors or agents. In every instance the product is shipped directly from the processing plant in Georgia to the customer. All of the executive offices are located in Elizabeth, New Jersey. Sales are supervised there and the company financing is done there. All of the corporate directors live in New Jersey and all directors meetings are held in New Jersey. All of the corporate officers, with one exception, live in New Jersey. An Assistant Secretary lives in Georgia. The corporate records are kept in New Jersey and federal income tax returns are filed there.

None of the officers or directors of the Defendant who live in New Jersey are full-time employees of the company, and the executive, sales and financial office quarters in Elizabeth are shared by the Defendant with other corporations, some or all of which are controlled by the same interests which control Defendant.

The Defendant carries on its operations in Georgia through four departments or divisions. There is a Lands Division, which is concerned with the acquisition of lands by purchase or lease and with exploration and general land management; the Mining Division, which is concerned with the mining of clay; the Manufacturing Division, which handles all phases of processing the clay; and the Technical Division, which presumably has to do with research and engineering. Each of these departments is headed by a full-time manager, and each of these managers is a resident of Georgia. There is no general superintendent and the general overall direction of the operations centers in Mr. Grassman in New Jersey, and communication between the New Jersey office and the Georgia operation is maintained by telephone and teletype.

The Defendant has a total of 470 employees. Of this total 419 are employed in Georgia and 51 are employed in New Jersey. All of the 419 Georgia employees are employed full-time, and 375 of them perform no services outside of Georgia. It is not clear from the record what portion of the New Jersey employees are full-time employees, but it does appear that only 5 of the 51 perform their services entirely within the state of New Jersey and they are designated as "maintenance personnel". It has been previously noted that the officers are not full-time employees, but the record does show that about 60 per cent of such time as they do give to the company is spent in New Jersey, about 10 per cent in Georgia, and about 30 per cent elsewhere.

Of the total book value of Defendant's lands, buildings, machinery, equipment and inventories more than 98 per cent is located in Georgia. Practically all of its intangible assets are held in New Jersey.

The Defendant was protected from disclosing information with regard to its gross tonnage production and with regard to its gross sales and net profits, but since the only mines and processing plants operated by the Defendant are located in Twiggs County, Georgia, it is obvious that these results, whatever they may be, must be primarily associated with and attributable to the Georgia operations.

From these facts the "principal place of business" of Georgia Kaolin Company must be determined. The statute itself offers no guide in deciding what and where the principal place of business is. The question is one of fact and prior cases are, therefore, of limited assistance. We are aware of only one case in the Fifth Circuit involving an interpretation of the 1958 amendment, (Canton et al. v. Angelina Casualty Company, 279 F.2d 553) and there the facts were so

dissimilar as to be of no help here. A review of the cases decided in the other Circuits reveals a division as to the standard to be applied in making this determination. Some of the cases are decided on the "nerve center" theory. Scot Typewriter Co., Inc. v. Underwood Corp., D.C. S.D.N.Y.1959, 170 F.Supp. 862. Others search for the "center of corporate activity". Kelly v. United States Steel Corporation, 3 Cir. 1960, 284 F.2d 850. The Senate Report accompanying the 1958 amendment indicates that the meaning of "principal place of business" is to be found in the precedents interpreting the same phrase in Sec. 2 of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(1). Senate Report No. 1830, 85th Congress, 2nd Session (1958), U.S.Code Congressional & Administrative News, p. 3102. Here again the cases reveal a wide diversity of views as related to varied factual situations. In Continental Coal Corp. v. Roszelle Bros., 6th Cir., 242 F. 243, there were facts somewhat similar to those involved here, and the Court held that the principal place of business was where the coal mines were operated in Kentucky rather than where the executive offices were located in Tennessee. That case was cited with approval by the Court of Appeals for the Fifth Circuit in Dryden et al. v. Ranger Refining & Pipe Line Co. et al., 280 F. 257.

The facts in this case now under consideration point to the conclusion that the principal place of business of Georgia Kaolin Company is in Twiggs County, Georgia. Its business is mining and processing kaolin, and since the only mines and processing plants operated by it are in Georgia, Georgia must be considered its principal place of business and the center of its activity. While it is true that the product of the mines must be sold, the selling is not the dominant feature of the business. It is the production end that is the prominent feature of the business and to which the efforts of the great majority of the employees and the large percentage of the assets are devoted. Since we conclude

that the Defendant's principal place of business is in Georgia, diversity of citizenship does not exist and this Court is without jurisdiction.

The action is remanded to the Superior Court of Twiggs County, Georgia, and the Clerk of this Court is ordered to mail a certified copy of this order to the Clerk of the Superior Court of Twiggs County, Georgia. Costs are to be taxed by the Clerk against the Defendant.