**Judge M. MULLINS et al.,**
**Appellants,**

v.

**BEATRICE POCAHONTAS COMPANY,**
**Appellee.**

No. 14298.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 5, 1973.

Decided Jan. 4, 1974.

Robert T. Winston, Norton, Va., and Carl W. Newman, Applachia, Va., for appellants.

R. Kenneth Wheeler, Richmond, Va. (Hunton, Williams, Gay & Gibson, Richmond, Va., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and WINTER and RUSSELL, Circuit Judges.

PER CURIAM:

■ Plaintiffs, landowners in the area surrounding Keen Mountain, Virginia, sought in this litigation to obtain compensatory damages and an injunction to abate an alleged nuisance caused by a coal operating plant of Beatrice Pocahontas Company in conjunction with its mine at Keen Mountain. The plant cleans coal of impurities so that it can be used in metallurgical processes, and a by-product of the cleaning process is coal dust which, it is alleged, is discharged into the atmosphere and falls out onto plaintiffs' property. Initially, the district court granted summary judgment against all property owners

who derived title to their land from deeds that conferred mineral rights on defendant. On appeal, we reversed and remanded the case for trial on the merits. Mullins v. Beatrice Pocahontas Co., 432 F.2d 314 (4 Cir. 1970). The case was tried and resulted in a judgment for defendant. In this appeal, plaintiffs contend that the findings of the district court that plaintiffs did not show an illegal invasion of their rights, under the standards of proof applicable to the classes into which they fall, were clearly erroneous, and that certain evidence was improperly admitted in violation of the hearsay rule. We note, for the first time, the possibility that the district court may have lacked jurisdiction to hear the case; and, hence, before passing upon the merits, we remand the case for further proceedings with regard to this question.

Plaintiffs alleged in their complaint that they were all residents and citizens of the State of Virginia, residing in Buchanan County, Virginia, in the Western District of Virginia. They alleged that defendant was a foreign corporation, incorporated under the laws of Delaware and a citizen of that state. Alleging also that the amount in controversy exceeded the sum of $10,000 as to each plaintiff, plaintiffs asserted that diversity of citizenship was the basis of the court's jurisdiction.

When one of the parties to an action in which jurisdiction is founded upon diversity of citizenship is a corporation, 28 U.S.C. § 1332(c) provides that the corporation "shall be deemed a citizen of any State by which it has been incorporated *and* of the State where it has its principal place of business . . . ." (Emphasis added). While plaintiffs alleged that defendant was a Delaware corporation—a fact admitted by defendant in its answer—plaintiffs made no allegation as to the state of defendant's

principal place of business. The record is far from clear as to the state of defendant's principal place of business. The record does show that defendant is jointly owned by Island Creek Coal Company and Republic Steel Corporation, and that these two companies also jointly own Virginia Pocahontas Co. which carries on business in the Virginia-West Virginia coal region. Defendant's brief suggests that the mining and processing operations located in Keen Mountain, Virginia, are the only industrial activities carried on by defendant. There is some indication that nearly all of defendant's employees for the years 1967 through 1971 were engaged in activities at the Keen Mountain operations.*

At argument of the appeal, we were unable to obtain any definitive information, on which counsel agree, as to defendant's principal place of business. Following argument, one of counsel for plaintiffs candidly advised us that the matter of jurisdiction was not gone into nor litigated in any of the preceding stages of the case, but that he was advised that defendant's principal office was at Huntington, West Virginia, and that defendant also carried on some mining operations in West Virginia.

Plaintiffs' complaint was filed on February 14, 1968, and that, of course, is the crucial date for the determination of defendant's citizenship. Defendant unquestionably is a citizen of Delaware, but it most certainly is also a citizen of Virginia or West Virginia, depending upon which state contains its principal place of business. If a citizen of West Virginia, diversity jurisdiction lay in the district court; but if a citizen of Virginia, the district court lacked jurisdiction and the complaint should be dismissed without reaching the merits and, hence, without prejudice.

---

\* There is testimony that the average number of employees at defendant's Keen Mountain plant for such years was as follows: 1967—403; 1968—425; 1969—461; 1970—460; 1971—454.

We note that Dun & Bradstreet's Million Dollar Directory (1973) lists the *total* number of defendant's employees at 450.

We have therefore concluded to hold the appeal on the merits in abeyance and request the district court to determine whether there was diversity of citizenship between the parties within the meaning of § 1332(c) on February 14, 1968, and to report its determination to us. In order to facilitate the determination of this question, the attention of the parties and the district court is directed to two divergent approaches to ascertaining the "principal place of business" of a corporation under § 1332(c) that may be found in the authorities. One approach makes the "home office," or place where the corporation's officers direct, control, and coordinate its activities, determinative. The other looks to the place where the bulk of corporate activity takes place. Compare Scot Typewriter Co. v. Underwood Corp., 170 F. Supp. 862, 865 (S.D.N.Y.1959) and Hughes v. United Engineers and Constructors, Inc., 178 F.Supp. 895 (S.D.N.Y.1959) with Anniston Soil Pipe Co. v. Central Foundry Co., 216 F.Supp. 473 (N.D.Ala.1963), aff'd 329 F.2d 313 (5 Cir. 1964) and Bruner v. Marjec, Inc., 250 F.Supp. 426 (W.D.Va.1966). See also C. Wright, Federal Courts § 27 at 90–91 (2d Ed. 1970). While intimating no view as to which of these positions this court will ultimately adopt, we suggest that, whichever line of authority the district court finds more convincing, it could advance the ultimate disposition of this question considerably by making findings of fact which are material to *both* theories.

When the district court has decided that diversity of citizenship does or does not exist, we request that it transmit its findings and conclusions to us together with any additional record that may have been made. Thereafter, within fifteen days, the parties may file supplemental memoranda on the jurisdictional question, and we will then proceed to final disposition of the appeal. Imposition of costs shall abide the final result.

Further proceedings requested.