**Dan GRIMM, Plaintiff,**

v.

**PLASMA PROCESSING CORPORATION,**
**Defendant.**

Civ. A. No. 6:95–0023.

United States District Court,
S.D. West Virginia,
Parkersburg Division.

June 7, 1995.

Patrick S. Cassidy, Cassidy, Myers, Cogan & Voegelin, L.C., Wheeling, WV, Robert C. Hicks, Rohrig & Hicks, Middlebourne, WV, for plaintiff.

Richard A. Hayhurst, Parkersburg, WV, Richard J. Antonelli, Christine J. Wichers, Buchanan Ingersoll Professional Corp., Pittsburgh, PA, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are the Plaintiff's motion to remand and motion to amend the complaint. In his motion to remand, the Plaintiff contends this Court lacks jurisdiction over this dispute because the parties lack diversity. The motions have been briefed and are ripe for adjudication. For the following reasons, the Plaintiff's motion to remand is **GRANTED** and the case is remanded to the Circuit Court of Jackson County, West Virginia. Because the Court lacks subject matter jurisdiction, it cannot take action on the motion to amend the complaint; it remains for disposition in the state forum.

The Plaintiff is a West Virginia citizen hired by the Defendant corporation to manage the operations of its aluminum dross processing facility at Millwood, West Virginia. The Plaintiff was employed from March, 1990 to January 1994, when he was terminated by the Defendant. The Plaintiff alleges his termination was wrongful. He filed this action asserting promissory estoppel, fraud, violation of public policy, libel and slander, and right to privacy.

The Defendant is a Delaware corporation qualified to do business in West Virginia. It is a wholly owned subsidiary of the First Mississippi Corporation which is located in Jackson, Mississippi. The Defendant's corporate offices are located in leased quarters in Brentwood, Tennessee, and it employs an administrative staff of approximately 10 people. The Defendant's sole production facility is the Millwood, West Virginia plant. The $15 million facility employs between 50 and 75 West Virginians and operates continuously. In addition to the production facility, an aluminum dross processing plant, the Defendant also maintains three warehouses in Ohio. Although the Defendant pays personal property taxes in both states, it pays real estate taxes only in West Virginia. The Defendant has no customers in West Virginia and conducts all sales and marketing from its Tennessee office. The Defendant maintains bank accounts in West Virginia and Tennessee, but primarily banks at Continental Bank in Chicago, Illinois.

District courts have original jurisdiction of all civil actions where the amount in controversy exceeds $50,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1). When a corporation is a party to an action, the statute provides "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1). Because it is uncontested the Defendant was incorporated in Delaware, the dispute centers on whether the Defendant's principal place of business is located in West Virginia. If the principal place of business is in West Virginia then diversity is destroyed.

Our Court of Appeals does not use one test to determine where a corporation's principal place of business is located. Instead, it has endorsed two methods: the nerve center analysis and the corporate activities analysis. *Mullins v. Beatrice Pocahontas Co.*, 489 F.2d 260, 262 (4th Cir.1974). The nerve center analysis focuses on the location of the decision making functions of the corporation. *Mitchell v. Monongahela Power Co.*, 602 F.Supp. 756, 758 (S.D.W.Va. 1985) (Haden, C.J.). The corporate activities analysis "focuses on the place of operation, that is, the situs of the corporations's tangible assets." *Id.* In performing this analysis "[t]he statute establishing diversity jurisdiction is to be strictly construed and all doubts are to be resolved against federal jurisdiction." *Frontier Energy Corp. v. Broda*, 882 F.Supp. 82, 85 (N.D.W.Va.1995) (Keeley, J.); *Mitchell*, 602 F.Supp. at 760.

Application of the nerve center analysis is not appropriate to the case at hand. This Court recognized previously:

The nerve center analysis, focusing attention on the decision making process within the corporation, is better suited where there is no clear center of center of corporate business activity.... The nerve center analysis is also preferred where there is no current enterprise in which the business is engaged.

*Mitchell,* 602 F.Supp. at 759. This Court has noted also the nerve center analysis "is well-suited for cases where there is no clear center of corporate activity because the corporate enterprise is 'far-flung and varied.' " *AFA Enterprises, Inc. v. American States Ins. Co.,* 842 F.Supp. 902, 906 (S.D.W.Va. 1994) (Haden, C.J.) (quoting *Mitchell,* 602 F.Supp. at 758–759).

■ Plasma does not have far-flung and varied operations. It has a processing plant in West Virginia and its corporate headquarters is in Tennessee. The maintenance of warehouses in Ohio in addition to the operations in West Virginia and Tennessee does not signify a far-flung and varied enterprise. The warehouses do not exist as a distinct business, but are used in support of the Defendant's single line of operations: aluminum dross processing. Because the Defendant is not a diversified or far-flung operation, application of the nerve center analysis is inappropriate. *Broda,* 882 F.Supp. at 84–85; *Arbee Mechanical Contractors v. Capital Sun Corp.,* 683 F.Supp. 144, 147 (E.D.Va. 1988); *Mitchell,* 602 F.Supp. at 760; *Mullins v. Beatrice Pocahontas Co.,* 374 F.Supp. 282, 285 (W.D.Va.1974), *aff'd without opinion* 530 F.2d 969 (4th Cir.1975). Instead, the corporate activities analysis must be used.

The corporate activities test focuses on the location of the corporation's tangible assets. This follows the statute's legislative history, which indicates emphasis should be placed on the locus of operations rather than where the policymaking functions are carried out. 13B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3625 (hereinafter Wright & Miller). To do the analysis, the Court must determine "where the corporation would be most visible, would have the most contact with the public, and where the corporation would consider its home, although ... no one fact would control."

*Mitchell,* 602 F.Supp. at 758. In reaching its determination

the Court may examine factors such the location where business is carried out, where people are employed, where bank accounts are held, where assets are located, where taxes are paid and returns filed, where administrative, accounting, and corporate records are kept, where meetings are held, etc.

*AFA Enterprises,* 842 F.Supp. at 908 (citing Wright & Miller § 3625).

■ Applying the factors of the corporate activities analysis and focusing on the Defendant's tangible assets, it is evident West Virginia is the Defendant's principal place of business. The Defendant's only production plant, by far its largest corporate asset, and from which it ultimately derives all its income, is in West Virginia. It pays real estate taxes only in West Virginia. The majority of its employees work in West Virginia. The manager of the West Virginia facility can hire and fire employees. Although most corporate officers work in Tennessee, the Vice President of Technology spends seventy-five percent (75%) of his time in West Virginia. The location of its various bank accounts does not weigh in favor of Tennessee or West Virginia because the Defendant's primary bank is located in Chicago, Illinois.

That the Defendant is a subsidiary of another corporation does not outweigh the factors showing West Virginia to be the center of the Defendant's activities and tangible assets. The relationship between the Defendant's operations and its parent's business is immaterial to the determination of the Defendant's principal place of business. Even if the Defendant served its parent corporation exclusively, it would not alter the conclusion that West Virginia is the Defendant's principal place of business. *See Caperton v. Pocahontas,* 420 F.Supp. 445, 450 (W.D.Va.1976), *aff'd sub nom. Caperton v. Beatrice Pocahontas Coal Co.,* 585 F.2d 683 (4th Cir.1978). The Defendant is most visible and active in West Virginia.

Because the Defendant's principal place of business is West Virginia, diversity does not exist between the parties. The Court lacks

subject matter jurisdiction. Accordingly, this case is **REMANDED** to the Circuit Court of Jackson County, West Virginia for resolution.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel, close the case, and to forward the file to the Circuit Court of Jackson County.